MICHAEL FAILLACE &ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
PRIXCO SORIANO REYES and AGUSTIN
VALERIANO VILLAREAL, *individually and on behalf of others similarly situated,*

     *Plaintiffs*,

-against-

OTTOMANELLI'S CAFE FRANCHISING CORP., OTTOMANELLI BROTHERS LTD., S. L. 86 CORP. (d/b/a OTTOMANELLI'S CAFÉ), S. L. 93 CORP. (d/b/a OTTOMANELLI NEW YORK GRILL), NICOLO OTTOMANELLI, JOSEPH OTTOMANELLI JR., and STUART LIU,

     *Defendants.*
-------------------------------------------------------X

17-cv-01035-RJS

**ATTORNEY AFFIRMATION IN SUPPORT OF DEFAULT JUDGMENT**

## APPLICATION FOR DEFAULT JUDGMENT

  COLIN MULHOLLAND, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

  1. I represent the Plaintiffs Prixco Soriano Reyes, Agustin Valeriano Villareal, Antonio Quirino Ruiz, Leonides Rescalvo Flores and Obed Dominguez in this lawsuit for unpaid wages under the FLSA and New York Labor Law and regulations ("Plaintiffs"). I submit this affirmation in support of Plaintiffs' application for a default judgment pursuant to Fed. R. Civ. P. 55(b) (2) and Local Rule 55.2(b).

## PROCEDURAL HISTORY

2.  The complaint in this action was filed on February 10, 2017 against Nicolo Ottomanelli, Ottomanelli Brothers Ltd., Joseph Ottomanelli Jr., Ottomanelli's Cafe Franchising Corp. *See* Civil Docket Sheet Entry 1. *Complaint* attached as **Exhibit 1**.

3.  A first amended complaint in this action was filed on April 20, 2017 against Stuart Liu, Nicolo Ottomanelli, Joseph Ottomanelli Jr., S.L. 86 Corp., S.L. 93 Corp., Ottomanellis Cafe Franchising Corp., Ottomanelli Brothers Ltd. *See* Civil Docket Sheet Entry 31. *First Amended Complaint* attached as **Exhibit 2**.

4.  An answer to the first amended complaint was filed on May 3, 2017 by Nicolo Ottomanelli, Ottomanelli Brothers Ltd., Joseph Ottomanelli Jr., Ottomanelli's Cafe Franchising Corp., Ottomanellis Cafe Franchising Corp. *See* Civil Cover Docket Sheet Entry 39. *Answer* attached as **Exhibit 3**.

5.  A summons and copy of the First Amended Complaint was properly served on Defendant Stuart Liu on May 4, 2017. *See* Civil Docket Sheet Entry 43. *Affidavit of Service* attached as **Exhibit 4.**

6.  A summons and copy of the First Amended Complaint was properly served on Defendant S.L. 93 Corp. on May 3, 2017. *See* Civil Docket Sheet Entry 44. *Affidavit of Service* attached as **Exhibit 5.**

7.  A summons and copy of the First Amended Complaint was properly served on Defendant S.L. 86 Corp. on May 3, 2017. *See* Civil Docket Sheet Entry 45. *Affidavit of Service* attached as **Exhibit 6.**

8.  A Stipulation of Dismissal was filed on July 5, 2017 against Nicolo

Ottomanelli, Ottomanelli Brothers Ltd., Joseph Ottomanelli Jr., Ottomanelli's Cafe Franchising Corp., Ottomanellis Cafe Franchising Corp. *See* Civil Docket Sheet Entries 53 and 54. *Stipulation of Voluntary Dismissal* attached as **Exhibit 7.**

9.  Plaintiffs Antonio Quirina Ruiz, Leonides Resclavo Flores and Obed Dominguez consented to joint this law suit on June 16th, 2017. Dkt Entries 48-50. *Consent Forms* attached hereto as **Exhibit 8**.

10. A status report was filed on July 18, 2017. *See* Civil Docket Sheet Entry 56.

11. Pursuant to the stipulation of voluntary dismissal, Defendants Ottomanelli's Cafe Franchising Corp., Ottomanelli Brothers Ltd., Nicolo Ottomanelli, and Joseph Ottomanelli Jr. were terminated from this action on July 18, 2017. *See* Civil Docket Sheet Entry 57.

12. On July 27, 2017, Defendant Stuart Liu filed a notice of appearance pro se. *See* Civil Docket Sheet Entry 59.

13. On July 27, 2017, Judge Sullivan directed Plaintiffs to serve remaining Defendants (S.L. 86 Corp., S.L. 93 Corp. and Stuart Liu) with his Order dated July 27, 2017, ordering Defendants to answer or otherwise respond to the Complaint by August 14, 2017, and that if they did, parties shall file a joint letter and case management plan by August 28, 2017, and if they did not, Plaintiffs shall submit default judgment motion no later than August 28, 2017. *See* Civil Docket Sheet Entry 60.

14. An affidavit of service of said Order was filed on July 28, 2017. *See* Civil Docket Sheet Entry 61. *Affidavit of Service* attached as **Exhibit 9.**

15. This is an action for unpaid wages, overtime, spread of hours pay, liquidated damages, interest, costs and attorneys fees under the Fair Labor Standards Act (29 U.S.C. 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. See Exhibit A, generally, Complaint (for description of the nature of the claim).

16. The Court has subject matter jurisdiction of the Plaintiffs' federal claims 29 U.S.C. §§ 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction).

17. Defendants Stuart Liu, S.L. 86 Corp and S.L. 93 Corp. ("Defendants") did not answer or otherwise respond to the Complaint.

18. Defendants are neither infants nor incompetents.

19. Plaintiffs filed for and received from the Clerk a Clerk's Certificate of Default, stating that the Defendants were properly served and failed to answer/appear, signed and stamped by the Clerk of the Court (attached hereto in original as "**Exhibits 10**", "**11**" & "**12**")

20. Plaintiffs incurred costs and attorneys fees in pursuing this action, and seek an award of reasonable attorney's fees and costs. A breakdown of attorney's fees and costs incurred in filing the Complaint and seeking default, in the form of my firm's standard billing sheet is attached hereto as **Exhibit 13**.

21. Plaintiffs seek an award of damages in this motion for default judgment, and as such, assert that definitive information and documentation such that the amount provided for in the proposed judgment can be calculated. However, in the event this requirement cannot be satisfied, Plaintiffs seek a default judgment as to liability, and requests that damages be

determined by an inquest, should the court deem these papers insufficient to support an award of damages at this juncture.

22. As alleged in the Complaint and accompanying Affidavit, Stuart Liu, S.L. 86 Corp and S.L. 93 Corp were joint employers running restaurant businesses at 1626 York Avenue, New York, NY 10028 (under the name "Ottomanelli's Café") (hereinafter "the 85th Street location"), and at 1424 Lexington Ave, New York 10128 (under the name Ottomanelli New York Grill) (hereinafter "the 93rd Street location"). First Amended Complaint ¶ 2.

23. Throughout Plaintiffs' employment with Defendants, Defendants had the power to hire and fire the Plaintiffs, control terms and conditions of Plaintiffs' employment, and determine the rate and method of Plaintiffs' compensation. First Amended Complaint.

24. Plaintiffs' duties allowed them to see that the products received, used and sold by Defendants came from locations outside of New York State. Further, as a part of their duties, Plaintiffs had to regularly handle and use these items in interstate commerce. First Amended Complaint.

### PLAINTIFF PRIXCO SORIANO REYES

25. Plaintiff Reyes worked with the Defendants between June of 2016 until on or about January 16th, 2017. **Declaration of Plaintiff Prixco Soriano Reyes ¶ 5.**

26. He was ostensibly employed as a delivery worker however he was required to perform non-delivery tasks for at least two hours in his work day. **Declaration of Plaintiff Prixco Soriano Reyes ¶ 6-7.**

27. He worked on average between 60-62.5 hours in a week throughout the entirety of his employment with the Defendants. **Declaration of Plaintiff Prixco Soriano Reyes ¶ 11.**

28. He was paid a fixed salary of $50 a day. **Declaration of Plaintiff Prixco Soriano Reyes ¶ 14.**

### PLAINTIFF AUGUSTIN VALERIANO VILLAREAL

29. Plaintiff Villareal worked with the Defendants between March 9th, 2015 until on or about October 19th, 2015. **Declaration of Plaintiff Augustin Valeriano Villareal ¶ 5.**

30. He was ostensibly employed as a delivery worker however he was required to perform non-delivery tasks for at least two hours in his work day. **Declaration of Plaintiff Augustin Valeriano Villareal ¶ 6-7.**

31. He worked on average between 61.5 hours in a week throughout the entirety of his employment with the Defendants at the 85th Street location with five occasions working at the 93rd Street location. **Declaration of Plaintiff Augustin Valeriano Villareal ¶ 11.**

32. He was paid a fixed salary of $50 a day. **Declaration of Plaintiff Augustin Valeriano Villareal ¶ 14.**

### PLAINTIFF ANTONIO QUIRINO RUIZ

33. Plaintiff Ruiz was employed by Defendants from between October 2015 until on or about June 5th, 2017. **Declaration of Plaintiff Antonio Quirino Ruiz ¶ 5.**

34. He was employed as a cook at the 93rd Street location. **Declaration of Plaintiff Antonio Quirino Ruiz ¶6.**

35. He worked an average of 57.5 hours a week during his employ. **Declaration of Plaintiff Antonio Quirino Ruiz ¶ 10.**

36. He was paid a fixed salary of $591.50 per week between October of 2015 and June of 2016. **Declaration of Plaintiff Antonio Quirino Ruiz ¶ 12.**

37.     He was paid a fixed salary of $616.50 per week between July of 2016 and June 5th, 2017. **Declaration of Plaintiff Antonio Quirino Ruiz** ¶13.

### PLAINTIFF LEONIDES RESCLAVO FLORES

38.     Plaintiff Flores was employed by Defendants from between September 21st, 2013 until on or about June 5th, 2017. **Declaration of Plaintiff Leonides Resclavo Flores** ¶ 5.

39.     He was employed as a dishwasher, food preparer and delivery worker. **Declaration of Plaintiff Leonides Resclavo Flores** ¶6.

40.     He worked an average of 60 hours a week during his employ. **Declaration of Plaintiff Leonides Resclavo Flores** ¶ 11.

41.     He was paid a fixed salary of $50.00 per day during his employ. **Declaration of Plaintiff Leonides Resclavo Flores** ¶ 13.

### PLAINTIFF OBED DOMINGUEZ

42.     Plaintiff Dominguez was employed by Defendants from between February 2005 to June 5th, 2017. **Declaration of Plaintiff Obed Dominguez** ¶ 5.

43.     He was employed as a cook at the 93rd Street location **Declaration of Plaintiff Obed Dominguez** ¶6.

44.     He worked an average of 60 hours a week during his employ. **Declaration of Plaintiff Obed Dominguez** ¶ 11.

45.     From approximately June 2011 until on or about June 2012, Defendants paid him a fixed salary of $1,000 every two weeks. **Declaration of Plaintiff Obed Dominguez** ¶ 13.

46.     From approximately July 2012 until on or about August 2013, Defendants

paid him a fixed salary of $1,100 every two weeks. **Declaration of Plaintiff Obed Dominguez ¶ 14.**

47.     From approximately August 2013 until on or about December 2015, Defendants paid him a fixed salary of $1,200 every two weeks ($300 by check and the rest in cash). **Declaration of Plaintiff Obed Dominguez ¶ 15.**

48.     From approximately January 2016 until on or about June 5, 2017, Defendants paid him a fixed salary of $1,300 every two weeks ($300 by check and the rest in cash). **Declaration of Plaintiff Obed Dominguez ¶ 16.**

## ARGUMENT

<u>Plaintiffs are Entitled to Judgment by Default</u>

49.     It is well settled that defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

50.     Defendants have failed to file an answer or otherwise respond to the Complaint, despite the time to do so having expired. Thus, Plaintiffs' allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiffs' right to default judgment.

51.     Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to

determine damages, such a hearing is not mandatory." *Id.* "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" *Id.* (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)).

52.    Plaintiffs maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiffs has put forward, damages, including back pay, liquidated damages, prejudgment interest, should be awarded in the amount of $292,439.64, and attorneys' fees and costs should be awarded in the amount of $8,055.00.

Plaintiffs' Damages Calculation

53.    Annexed as Exhibit 14 is a chart setting out the damages Plaintiffs is entitled to recover.

54.    In the damages chart, the Plaintiffs' wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiffs' affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The next line indicates the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period"). The next line in the chart automatically calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiffs (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours

Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiffs' affidavit. The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period.

55.  *Calculations within the Chart* – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period. The actual formula used in this column is as follows:

> ((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) +
> ((greater time and a half rate) * (Hours Per Week over forty, if any))

The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiffs is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to Plaintiffs (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 25% for damages occurring prior to April 9, 2011 and 100% for any subsequent damages.

56.  The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period)

\* (the minimum wage).  The liquidated damages on SOH pay are all calculated at the rate of 100%.

57.     The legal basis for the damages calculations within the chart are set out below.

Back Pay

58.     At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour.  Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week.  29 U.S.C. § 207(a)(1). From 2011 to 2013, the minimum wage under New York law was the same as under the FLSA.  The New York Minimum wage range increased to $8.00 per hour as of December 31, 2013; it further increased to $8.75 per hour as of December 31, 2014; it further increased to $9.00 per hour as of December 31, 2015; and it further increased to $11.00 per hour on December 31, 2016 (in New York City).  New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week.  12 N.Y.C.R.R. § 142-2.2.

59.     The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c).  "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, \*8 (S.D.N.Y. 2004) (the court accepted the Plaintiffs' estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work

> performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id*. (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

60. Here, Plaintiffs were not paid overtime at the rate of one-and-a-half times their regular rates. Rather, Plaintiffs received a fixed weekly salaries throughout their entire employment with Defendants that did not vary depending on whether he had worked in excess of forty hours in a week.

61. Where an employee receives a straight weekly salary, there is a rebuttable presumption under the FLSA that the salary covers 40 hours worked. Therefore, to determine the regular rate, the weekly salary is divided by 40 hours. *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

62. Further, under the New York Hospitality Industry Wage Order, the regular rate for a restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCRR §146-3.5 (2013).

63. Accordingly, to determine the Plaintiffs' unpaid overtime wages, Plaintiffs' regular rate is determined by dividing their weekly salary by 40 hours. Then the regular rate is multiplied by 1.5 to determine the overtime rate the Plaintiffs should have received.

64. Plaintiff Reyes is owed $12,091.00 in unpaid wages. Plaintiffs Reyes is entitled to $1,028.00 in prejudgment interest on wages and overtime. *See* Exhibit 14.

65. Plaintiff Villareal is owed $12,230.00 in unpaid wages. Plaintiffs Villareal is entitled to $2,429.00 in prejudgment interest on wages and overtime. *See* Exhibit 14.

66. Plaintiff Ruiz is owed $34,256.25 in unpaid wages. Plaintiffs Ruiz is entitled to $3,429.24 in prejudgment interest on wages and overtime. *See* Exhibit 14.

67. Plaintiff Flores is owed $69,775.00 in unpaid wages. As of August 17, 2017, Plaintiffs Flores is entitled to $12,257.77 in prejudgment interest on wages and overtime. *See* Exhibit 14.

68. Plaintiff Dominguez is owed $136,762.50 in unpaid wages. Plaintiffs Dominguez is entitled to $38,598.19 in prejudgment interest on wages and overtime. *See* Exhibit 14.

Spread of Hours Pay

69. Plaintiffs are also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of overtime-rate pay beyond their regular pay when the workday is more than ten (10) hours. 12 N.Y.C.R.R. § 146-1.6; *Angamarca v. Pita Grill 7 Inc.*, 2012 U.S. Dist. LEXIS 108322, *16-17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).

70. As set out above, Plaintiffs regularly worked more than ten hours per day throughout their entire employment.

Three Year Statute of Limitations Under FLSA

71. Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years. 29 U.S.C. § 255(a).

72. Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Damassia v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. *See Hardrick v. Airway Freights Systems, Inc.*, 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003), *aff'd,* 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

73. In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defendants failed to investigate whether their compensation policy was legal. *See Hardrick*, 63 F. Supp. 2d at 904.

74. Moreover, the Defendants failed to post the required information concerning the minimum wage laws, paid the Plaintiffs in cash, and had no system for recording, or even having Plaintiffs record, their hours. This deliberate decision to disregard both FLSA and New York law, as well as Defendants' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. *Doo Nam Yang v. ACBL Corp.,* 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer

knowingly, deliberately, or voluntarily disregards its obligation to pay wages")(internal quotations omitted).

75. As Plaintiffs can establish that Defendants' violation of the FLSA was willful, he are entitled to a three-year limitations period under the FLSA. *See, e.g.*, *Decraene v. Neuhaus (U.S.A.), Inc.*, 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005). Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiffs' employment, which was less than six years from the filing date.

### Wage Notice and Statement Violations

76. Defendants never provided Plaintiffs with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3). Plaintiffs are therefore each entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000 each Plaintiff and $50,000 total for all Plaintiffs.

### Liquidated Damages

77. Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award

discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

78. Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." *Wei*, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

79. Given the uncontroverted evidence of Defendants' lack of good faith Plaintiffs are entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

80. Plaintiffs' total unpaid wages equal $265,114.75. They are entitled to liquidated damages in the amount of $265,114.75. *See* Exhibit 14.

81. Plaintiffs' total spread of hours damages equal $28,063.75. They are entitled to liquidated damages in the amount of $28,063.75. *See* Exhibit 14.

Attorneys' Fees and Costs

82. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiffs or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

83. Plaintiffs incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs.

84. The costs are a total of $730.00, including a filing fee of $400.00 and fees associated with serving the defendants with the summons and complaint.

85. A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as Exhibit 13.

86. The timekeepers on this matter are indicated by the following initials and have the following rates:

    a. "MF" — Michael Faillace, $450 per hour
    b. "CM" – Colin Mulholland, $350 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

    i. Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. His regular billing rate of $450 per hour is reflected in Exhibit 15.

      ii.    Colin Mulholland is an associate at Michael Faillace & Associates, P.C. She graduated from Cardozo School of Law in 2012. Following law school, he has cultivated an expertise in employment law, serving as a civil litigation associate at a firm in Brooklyn, New York for a three and a half year where he worked on civil and criminal matters, including over a dozens FLSA suits, before working at Michael S. Lamonsoff & Associates for a year where he worked exclusively on personal injury cases. Colin joined Michael Faillace & Associates, P.C. in May of 2017 and has focused almost exclusively on litigating FLSA/NYLL claims.

Conclusion

87.    Based on the above information and exhibits, Plaintiffs asserts the record supports a judgment against the Defendants in favor of Plaintiffs in the total amount of $699,964.67 for overtime damages, spread of hours damages, liquidated damages, prejudgment interest. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

88.    Additionally, Plaintiffs is entitled to $10,273.40 in attorneys' fees and costs.

89.    As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiffs that allows damages to be calculated with reasonable certainty.

90.    No part of the judgment sought has been paid.

91.     Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiffs' declarations accompanying these motion papers.

92.     Plaintiffs also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

93.     Plaintiffs also requests that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

94.     The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

95.     A proposed form of judgment is attached as <u>Exhibit 15</u>.

96.     For the reasons stated above and in the accompanying declarations and exhibits, the Plaintiffs' motion for a default judgment should be granted.

97.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
        September 11, 2017

_____
Colin Mulholland, Esq.